358 P.2d 88

G. O. PATTERSON and Edna L. Patterson, husband and wife, Plaintiffs and Respondents,

v.

Max C. WILCOX et ux., and Ben D. Browning et ux., et al., Defendants and Appellants.

No. 9278.

Supreme Court of Utah.

Jan. 10, 1961.

Edward M. Garrett, Salt Lake City, for appellants.

Robert H. Ruggeri, Moab, for respondents.

HENRIOD, Justice.

Appeal from a judgment quieting title to gas and oil rights in plaintiffs. Affirmed with costs to plaintiffs.

The only question here is the construction of a written instrument embodied in a standard quitclaim deed form, which was unacknowledged and unrecorded, plaintiffs being the grantors therein and defendant Wilcox being the grantee. It bore the date of April 28, 1955. The property was described as being 30 unpatented mining claims in Township 31 South, Range 26 East, "and all mineral rights" in 400 acres of described fee land in the same township and section. In a novel provision so far as quitclaim deeds go, the document then employed leasehold language, reserving 10% "of all minerals reserved by this deed as

determined by gross mill receipts less haulage allowance and penalties for high lime content; said ore payment to terminate when such payments shall be paid in the sum of $5,000,000."

Transfer of unpatented mining claims carries with it no oil or gas rights since such rights are reserved to the government.[1] The nub of this case, therefore, is the question as to what the parties intended should pass by the document as to the 400 acres,—whether 1) all minerals, including gas and oil,[2] or 2) only minerals such as uranium, kindred fissionable ores and associated and related materials that are treated by mills, with haulage allowances. The trial court, on what we consider to have been believable, competent and substantial evidence, concluded that only fissionable and related millable ores were intended to pass by the document, without oil and gas being intended to be included.

Mr. Ben Browning, a lawyer, was interested, along with Wilcox in a corporation formed to develop uranium properties. In 1955, following discovery of uranium in the area by one Charles Steen, there was intense activity in staking claims and searching for this mineral. It is and was common knowledge that at that time

1. 30 U.S.C.A. § 193.
2. Generally the word "minerals" includes gas and oil. We so observed in Western Development Co. v. Nell, 4 Utah 2d 112, 288 P.2d 452. The trial court conceded the general rule. See 36 Am.Jur. 283, Sec. 5, Mines and Minerals.

266

the atomic age had arrived, uranium was its powerhouse and the federal government not only had pre-empted the production and consumption of fissionable ores, but was paying sizeable premiums and bonuses for their production.

Plaintiffs urge that the parties did not intend that gas and oil be included in the word "minerals," and defendants, of course, as strongly urge the opposite.

After some preliminary discussion as to uranium prospects on the land, Mr. Browning, together with a fellow lawyer, Mr. Garrett, and Mr. Wilcox, went to a site where Mr. Patterson had his camp, to solicit and negotiate for the acquisition of the property for mining purposes, apparently to be developed by the Plateau Mining Corporation, in which both Browning and Wilcox appeared to be interested. At about two o'clock in the morning, after discussing nothing but uranium potentials, and at a time when Patterson was not represented by legal counsel save the two who were seeking his property, Mr. Browning dictated two instruments to Mr. Garrett, who typed them. The first imposed an obligation on Wilcox to do the annual assessment work on the claims. The second was the instrument construed here, which later was transferred to the corporation, whose articles appear to be typical of those which everyone knew were being formed by the score to promote uranium production. Pat-

terson, a rancher, signed the instruments, as did Wilcox. After probing the property for a relatively short time, and after doing the assessment work only for the year 1955, operations were abandoned. There appears in the record no evidence of any effort or claim by defendants as to oil exploration prior to the time plaintiffs filed this suit. Subsequent to the 1955 documents and after defendants had halted operations, oil and gas possibilities in the area took on an aspect of added interest. Thus, this litigation.

There is nothing in the record to indicate that the parties had else in mind but one thing at the time of executing the instrument,—uranium and associated and related ores. The documents themselves tend to point up such intent when provision was made for assessment work and reservation of royalty payments was required in most typical and significant hard rock ore mining parlance, determinable "by gross mill receipts less haulage allowance and penalties for high lime contents; said ore payment to terminate when such payments shall be paid in the sum of $5,000,000." We cannot concur in the contention that the instruments clearly and without ambiguity showed an intent to pass gas and oil rights, but we do believe that the language used in the atmosphere of the time justified a determination by the court of the intentions of the parties.

It is most difficult to conclude that the language employed applied only to the un-

patented mining claims but not to the 400 fee acres, and it is quite unreasonable to believe that the parties intended a conveyance of the oil rights on such acreage without reservation of a royalty of some kind for oil production had anything more than the transfer of hard rock ore rights been intended. Nowhere in the record is there any evidence that the parties discussed anything but the then uranium possibilities, but on the contrary, the record is abundantly clear from the language and negotiations of the parties that they looked to but one thing,—the sale by Patterson and the purchase by Wilcox of rights in ore.

We agree that generally speaking, language in instruments of grant is construable more strongly against the grantor. But also there is this: that where a lawyer solicits a purchase contract from one unlearned in the law, unrepresented by legal counsel, and who trusts and permits such lawyers to become amanuensis, author and draftsman for such an unlearned one, good conscience and common sense dictate that any of the terms of the contract, if unclear, incomplete or subject to more than one interpretation that interpretation that most favors the layman will prevail. This, even though such layman be a grantor and even though there exists the general rule mentioned above. We think that under the circumstances of this case where there was a solicitation by an interested attorney for the purchase of land from a rancher in the middle of the night in a remote camp, with only ore in mind, lend themselves to the application of such principle.

Each case must be canvassed in the light of the language used and in the atmosphere in which it was indulged, and if it be sufficiently equivocal to lend reasonable credence, to more than one conclusion regarding the intention of the parties, as we believe the case to be here, it becomes necessary to view it in the climate attending its use, and the courts are proper arbiters of the question of intention of the parties. The trial court, after reviewing the evidence and considering the circumstances under which the document was executed, concluded as he did. We are required to sustain him if such conclusion was reasonable in the light of attendant circumstances, including the discussions and negotiations of the parties, if such conclusion was justified on competent, substantial, believable evidence, though conflicting in certain respects. We cannot say that there was such a lack in quantum or quality of proof as to declare, upon our own review of the facts, that the trial court's conclusion was not supported by a preponderance of believable evidence or that there was a definite preponderance against it as would render the decision unreasonable or arbitrary. We think that affirmance in the Western Development case was justified under the facts

of that case and under the principles herein enunciated, albeit the trial court under the particular facts there adduced, construed the word "minerals" to have included oil and gas.

WADE, C. J., and McDONOUGH and CALLISTER, JJ., concur.

CROCKETT, Justice (concurring specially).

I concur in affirming the determination of the trial court that rights to gas and oil did not pass with the deed.